UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA

| | |
|---|---|
| THERESA A.[1], | ) |
| Plaintiff, | ) ) ) |
| v. | ) CIVIL NO. 2:21cv7 ) |
| KILOLO KIJAKAZI, Commissioner of Social Security, | ) ) ) ) |
| Defendant. | ) |

OPINION AND ORDER

This matter is before the court for judicial review of a final decision of the defendant Commissioner of Social Security Administration denying Plaintiff's application for Disability Insurance Benefits (DIB) under Title II of the Social Security Act. 42 U.S.C. § 423(d), § 1382c(a)(3). Section 405(g) of the Act provides, inter alia, "[a]s part of his answer, the [Commissioner] shall file a certified copy of the transcript of the record including the evidence upon which the findings and decision complained of are based. The court shall have the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the case for a rehearing." It also provides, "[t]he findings of the [Commissioner] as to any fact, if supported by substantial evidence, shall be conclusive. . . ." 42 U.S.C. §405(g).

The law provides that an applicant for disability insurance benefits must establish an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to last for a continuous period of not less than 12 months. . . ." 42 U.S.C. §416(i)(1); 42 U.S.C. §423(d)(1)(A). A physical or mental

---

[1] To protect privacy, Plaintiff's full name will not be used in this Order.

impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."  42 U.S.C. §423(d)(3).  It is not enough for a plaintiff to establish that an impairment exists.  It must be shown that the impairment is severe enough to preclude the plaintiff from engaging in substantial gainful activity.  *Gotshaw v. Ribicoff*, 307 F.2d 840 (7th Cir. 1962), cert. denied, 372 U.S. 945 (1963); *Garcia v. Califano*, 463 F.Supp. 1098 (N.D.Ill. 1979).  It is well established that the burden of proving entitlement to disability insurance benefits is on the plaintiff.  *See Jeralds v. Richardson*, 445 F.2d 36 (7th Cir. 1971); *Kutchman v. Cohen*, 425 F.2d 20 (7th Cir. 1970).

Given the foregoing framework, "[t]he question before [this court] is whether the record as a whole contains substantial evidence to support the [Commissioner's] findings. *Scott v. Astrue*, 734, 739 (7th Cir. 2011); 42 U.S.C. §405(g).  "Substantial evidence is defined as 'more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rhoderick v. Heckler*, 737 F.2d 714, 715 (7th Cir. 1984) quoting *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1410, 1427 (1971); *see also Jones v. Astrue*, 623 F.3d 1155, 1160 (7th Cir. 2010).  "If the record contains such support [it] must [be] affirmed, 42 U.S.C. §405(g), unless there has been an error of law."  *Garfield*, *supra* at 607; *see also Schnoll v. Harris*, 636 F.2d 1146, 1150 (7th Cir. 1980).

In the present matter, after consideration of the entire record, the Administrative Law Judge ("ALJ") made the following findings:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2023.

2

2. The claimant has not engaged in substantial gainful activity since August 6, 2018, the alleged onset date (20 CFR 404.1571 *et seq.*).

3. The claimant has the following severe impairments: multilevel degenerative disc disease, and a migraine headache disorder secondary to a remote traumatic brain injury (TBI) (20 CFR 404.1520(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) except she can occasionally climb ramps and stairs, balance, and/or stoop but she can never climb ladders, ropes, or scaffolds, kneel, crouch, or crawl. The claimant must avoid all exposure to hazards. Due to her migraine headache disorder, the claimant can understand, remember, and carryout simple tasks. Lastly, the claimant needs the option to alternate/change position as needed.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565).

7. The claimant was born on October 7, 1973 and was 44 years old, which is defined as a younger individual age 18-44, on the alleged disability onset date. The claimant subsequently changed age category to a younger individual age 45-49 (20 CFR 404.1563).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569 and 404.1569(a)).

11. The claimant has not been under a disability, as defined in the Social Security Act, from August 6, 2018, through the date of this decision (20 CFR 404.1520(g)).

(Tr. 26-33).

Based upon these findings, the ALJ determined that Plaintiff was not entitled to disability benefits. The ALJ's decision became the final agency decision when the Appeals Council denied review. This appeal followed.

Plaintiff filed her opening brief on August 19, 2021. On September 29, 2021, the defendant filed a memorandum in support of the Commissioner's decision. Plaintiff has declined to file a reply. Upon full review of the record in this cause, this court is of the view that the ALJ's decision must be affirmed.

A five-step test has been established to determine whether a claimant is disabled. *See Singleton v. Bowen*, 841 F.2d 710, 711 (7th Cir. 1988); *Bowen v. Yuckert*, 107 S.Ct. 2287, 2290-91 (1987). The United States Court of Appeals for the Seventh Circuit has summarized that test as follows:

> The following steps are addressed in order: (1) Is the claimant presently unemployed? (2) Is the claimant's impairment "severe"? (3) Does the impairment meet or exceed one of a list of specific impairments? (4) Is the claimant unable to perform his or her former occupation? (5) Is the claimant unable to perform any other work within the economy? An affirmative answer leads either to the next step or, on steps 3 and 5, to a finding that the claimant is disabled. A negative answer at any point, other than step 3, stops the inquiry and leads to a determination that the claimant is not disabled.

*Nelson v. Bowen*, 855 F.2d 503, 504 n.2 (7th Cir. 1988); *Zalewski v. Heckler*, 760 F.2d 160, 162 n.2 (7th Cir. 1985); accord *Halvorsen v. Heckler*, 743 F.2d 1221 (7th Cir. 1984). From the nature of the ALJ's decision to deny benefits, it is clear that step five was the determinative inquiry.

In support of remand, Plaintiff argues that the ALJ erred in his evaluation of the severity of Plaintiff's impairments. A medically determinable impairment is not "severe" at step two of the

4

sequential evaluation process if it does not "significantly limit" an individual's ability to perform basic work activities. 20 C.F.R. § 404.1522(a). Basic work activities include physical functions, such as walking, standing, sitting, lifting, pushing, pulling, carrying, and handling objects, and mental functions, like understanding, carrying out, and remembering simple instructions. 20 C.F.R. § 404.1522(b). "The burden… is on the claimant to prove that the impairment is severe." *Castile v. Astrue*, 617 F.3d 923, 926 (7th Cir. 2010) (citation omitted).

In the present case, at step two, the ALJ found that Plaintiff's sleep disorder and periodic limb movement disorders were not severe. (Tr. 26); *see* 20 C.F.R. § 404.1522. The ALJ noted that Plaintiff underwent a sleep study prior to her alleged onset date, which showed findings of "hypersomnia." (Tr. 27, 523). But, as the ALJ noted, the record showed no significant ongoing treatment for Plaintiff's alleged sleep disorders during the relevant period. (Tr. 27). In fact, Plaintiff last met with her sleep specialist at the Neurologic Institute, Larry Salberg, M.D., prior to her alleged onset date on November 9, 2017. (Tr. 665). Afterward, she appeared to seek no more treatment with him despite continuing to see other physicians at the Neurologic Institute. (Tr. 225, 227) (2019 disability report noting Plaintiff treated with Drs. Christea and Suwan at Neurologic Institute).

The ALJ also found that Plaintiff's various psychological disorders were not severe. (Tr. 26-28). The ALJ explained that the State agency psychological consultants found Plaintiff's mental impairments not severe, noting she had only "mild" limitation in three domains of mental functioning—understanding, remembering, and carrying out information and maintaining concentration, persistence, or pace—and no limitation in her ability to adapt or manage herself. (Tr. 27); (Tr. 80, 95-96). 20 C.F.R. § 404.1520a(d)(1) ("If we rate the degrees of your limitation

5

as "none" or "mild," we will generally conclude that your impairment(s) is not severe, unless the evidence otherwise indicates that there is more than a minimal limitation in your ability to do basic work activities (*see* § 404.1522).").

The ALJ also pointed out that Plaintiff underwent a psychological consultative examination during the relevant period, which showed she retained "significant cognitive facilities." (Tr. 27); (Tr. 444-45) (April 2019 consultative examination with Gary Durak, Ph.D., showing previous neuropsychological test "scores were in the average range," except for inattention, and that Plaintiff seemed cooperative with a generally intact memory, concentration that was "adequately attentive," average intellectual functioning, and a logical thought process despite a depressed and anxious mood and affect). The ALJ further noted that Plaintiff continued to perform a wide range of daily activities, like driving a vehicle, preparing meals, and managing her finances. (Tr. 27, 28); (Tr. 446) (Plaintiff reporting to Dr. Durak she could perform light chores and shopping, run simple errands, and prepare simple meals). Thus, the record clearly shows that the ALJ properly concluded that Plaintiff's psychological impairments (other than her migraine disorder secondary to her TBI) were not severe. (Tr. 26-28).

In any event, even if the ALJ erred in finding Plaintiff's sleep and psychological disorders not severe at step two, any error that an ALJ commits at step two is harmless so long as he goes on to consider the combined impact of a claimant's severe and non-severe impairments. *Curvin v. Colvin*, 778 F.3d 645, 649-50 (7th Cir. 2015). Here, the ALJ identified severe impairments of multilevel degenerative disc disease and migraine disorder secondary to a remote TBI. (Tr. 26). The ALJ went on to consider all of Plaintiff's impairments, explicitly considering Plaintiff's psychological impairments at step three and citing to the State agency psychological consultants'

6

findings that Plaintiff did not meet listings 12.04 or 12.06. (Tr. 28, 80, 95-96). In the RFC portion of the decision, the ALJ considered Plaintiff's conditions, including her sleep and psychological disorders, noting Plaintiff reported headache/TBI related symptomology to her providers. (Tr. 30); (Tr. 762) (Dr. Christea noting head trauma diagnosis in September 2018 and that "insomnia/ concentration/focus issues remain."). As the ALJ pointed out, Plaintiff generally denied "cognitive issues, and/or psychological issues" in meetings with her primary care physician, Dr. Christea. (Tr. 30); (Tr. 732, 751, 757, 768, 773, 779) (Dr. Christea's Review of Systems notes from March 2018 to June 2019 show Plaintiff denied psychiatric issues like "anxiety, depression… inability to concentrate, memory loss."). The ALJ further pointed out that Dr. Christea's April 2019 treatment records showed a "mental mini–mental [status] examination (MMSE) was normal." (Tr. 30); (Tr. 773) (MMSE showing Plaintiff appeared oriented with normal speech, normal language, no naming problems or confusion of left and right, normal concentration, normal attention, and appropriate fund of knowledge). Yet the ALJ nevertheless accommodated Plaintiff's reported migraine/TBI symptoms in the RFC, limiting her to understanding, remembering, and carrying out only "simple tasks." (Tr. 28, 31).

Plaintiff contends that the ALJ dismissed her TBI at step two. This is incorrect as the ALJ explicitly found "migraine headache disorder secondary to a remote traumatic brain injury" to be a severe impairment at step two. (Tr. 26). Also, contrary to Plaintiff's assertions, the ALJ discussed her TBI and related symptoms in the decision. In fact, the ALJ pointed out in the RFC section that Plaintiff largely denied cognitive difficulties and noted intact mini-mental status examination results. (Tr. 30). Plaintiff seems to believe that the ALJ did not address a June 2017 neuropsychological evaluation with Judith Harrington, Ph.D. However, the ALJ clearly considered

7

the report, which was contained in Exhibit 1F, as he cited to it in his summary of the evidence predating Plaintiff's claim of disability as of August 2018. (Tr. 30).

Plaintiff further argues that the ALJ incorrectly stated that Plaintiff's spine and migraine/ TBI impairments were her primary reasons for seeking disability, and lists other various conditions, like her sleep disorder, depression, and anxiety. However, Plaintiff fails to meet her burden to develop an argument on this point, offering no assessment about whether these impairments are severe or if they require any specific RFC limitations. *Sanders*, 556 U.S. at 409; *Castile*, 617 F.3d at 926; *Mettler v. Saul*, No. 1:18-CV-319-HAB, 2020 WL 634419, at *5 (N.D. Ind. Feb. 11, 2020), appeal dismissed, No. 20-1578, 2020 WL 5940086 (7th Cir. Apr. 28, 2020) (noting Plaintiff carries "the burden of providing evidence establishing the degree to which her impairments limit her RFC."). In any event, the ALJ properly characterized Plaintiff's TBI and spine-related conditions as her primary reasons for seeking benefits as she essentially said as much at the hearing. (Tr. 29); (Tr. 49-50) (Plaintiff explaining at the hearing she could no longer work full-time due to TBI injury and pain in her back from spondylosis of the spine in response to ALJ's question about why she could not work). Nor did the ALJ ignore Plaintiff's other conditions, as Plaintiff seems to suggest, as he found them non-severe. (Tr. 26-28).

In light of the above analysis, this Court finds that the ALJ did not commit reversible error at step two and that his step two findings are supported by substantial evidence.

Plaintiff also argues that the ALJ erred in failing to find that Plaintiff's impairments met or equaled a Listing. At step three, the ALJ determines whether the claimant's impairments "meets or equals" one of the listings. 20 C.F.R. § 404.1520(a)(4)(iii); *see* 20 C.F.R. Pt. 404, Subpt. P, App. 1. Plaintiff "bears the burden of proving [her] condition meets or equals a listed impairment."

8

*Maggard v. Apfel*, 167 F.3d 376, 380 (7th Cir. 1999). To meet or equal a listing, the impairment must meet "all the criteria of the listed impairment." *Id*. To equal a listing, "the record must contain" prior administrative findings from the State agency physicians, the opinion of a medical expert (ME), or statements from the Appeals Council's medical support staff supporting a finding of medical equivalence. Social Security Ruling ("SSR") 17-2p, 2017 WL 3928306, at *3.

Although the ALJ did not specify what listings he considered[2], the decision clearly indicates he analyzed Plaintiff's degenerative disc disease under Listing 1.04, for disorders of the spine. (Tr. 28); *see* 20 C.F.R. Pt. 404 Subpt. P., App. 1, § 1.04 (as effective March 27, 2017 to April 1, 2021). Listing 1.04 requires, in pertinent part, either "evidence of nerve root compression" to meet part A, or "inability to ambulate effectively" to meet part C. *Id*. § 1.04(A), (C); *see Jones v. Berryhill*, No. 2:17-CV-412-JEM, 2019 WL 1110409, at *3 (N.D. Ind. Mar. 11, 2019). Here, the ALJ pointed out that, "while there were some references to straight leg raise test (SLR) abnormalities, electromyography testing was unequivocally negative for radicular abnormalities," thus indicating no nerve root involvement, and further stated that he "found no evidence of any ineffective ambulation." (Tr. 28); *see* 20 C.F.R. Pt. 404 Subpt. P., App. 1, § 1.04(A), (C) (as effective March 27, 2017 to April 1, 2021).

In addition to considering Listing 1.04, the ALJ also clearly considered Listings 12.04 and

---

[2] Even if the ALJ erred by not explicitly identifying the Listings, he committed no more than harmless error as he clearly analyzed the criteria of Listings 1.04, 12.04, and 12.06, and determined Plaintiff did not meet the criteria of these Listings. (Tr. 28); *Jones v. Berryhill*, No. 2:17-CV-412-JEM, 2019 WL 1110409, at *3 (N.D. Ind. Mar. 11, 2019) (noting "the ALJ did not specifically identify Listing 1.04 in the analysis," but "did thoroughly analyze the medical evidence in light of the Listing requirements and the case will not be remanded for this reason.") (citing *Knox v. Astrue*, 327 F. App'x 652, 655 (7th Cir. 2009)).

12.06 by pointing out the prior administrative findings of the State agency psychology consultants who found that Plaintiff's mental impairments did not meet or equal these listings. (Tr. 28). The consultants specifically evaluated Plaintiff's reported mental impairments, considering the listing criteria for depression (Listing 12.04) and anxiety (Listing 12.06), and concluded her impairments did not satisfy the requirements for either listing. *See* (Tr. 80, 95-96). Also, despite Plaintiff's complaints of cognitive troubles, the consultants determined that Plaintiff did not meet the "paragraph B" criteria of these listings as she had no more than mild limitation in any of the domains of mental functioning, including understanding, remembering, or applying information and maintaining concentration, persistence, or pace, and no limitation in adapting or managing herself. (Tr. 80, 95-96); *see* 20 C.F.R. Pt. 404 Subpt P., App. 1, § 12.04(B), 12.06(B).

Plaintiff also argues that her TBI meets Listing 12.02 for neurocognitive disorders. 20 C.F.R. Pt. 404 Subpt P., App. 1, § 12.02. But Plaintiff fails to explain how the record supports that conclusion, as is her burden. *Maggard*, 167 F.3d at 380. Instead, Plaintiff implicitly suggests she meets part A of listing 12.02 by pointing to Dr. Harrington's 2017 report as evidence of "significant cognitive decline," and then vaguely asserts that it "can be argued" the report demonstrates marked limitation in two mental domains of functioning (part B). Yet Plaintiff makes no attempt to explain how the report shows marked limitation. Nor could she, as Dr. Harrington never stated Plaintiff had marked limitation in any domain of functioning in her summary of findings, nor did she state that Plaintiff demonstrated "significant cognitive decline." (Tr. 261). In fact, despite having noted some below-average concentration and attention in her observations of Plaintiff, (Tr. 252), Dr. Harrington explained that Plaintiff achieved "average" results in the cognitive testing she administered. (Tr. 261) ("Intelligence testing was performed using the

10

WAIS-IV and measured a Full Scale IQ of 95 (average), a Verbal IQ of 95 (average), a Perceptual Reasoning Index of 96 (average), a Working Memory Index of 95 (average), and a Processing Speed Index of 100 (average).").

As Plaintiff has failed to show that her impairments meet or equal a Listing there is no basis for remand on this issue.

Plaintiff also argues that the ALJ erred in his evaluation of Plaintiff's RFC. The RFC finding is the most an individual can do despite her limitations. 20 C.F.R. § 404.1545(a)(1); SSR 96-8p, 1996 WL 374184, at *2 (S.S.A. July 2, 1996). The ALJ is responsible for determining the RFC, considering all relevant medical and other evidence in making that determination. 20 C.F.R. §§ 404.1545(a)(3), 404.1546(c). Plaintiff bears the burden of presenting evidence that shows her functional limitations prevent her from working. 42 U.S.C. § 423(d)(5)(A); *Bowen*, 482 U.S. at 146 n.5 ("It is not unreasonable to require the claimant, who is in a better position to provide information about [her] medical condition, to do so."). Hence, Plaintiff has the burden of proving that her RFC was more restrictive than the ALJ found, while the Commissioner must show that substantial evidence supported the ALJ's decision. *See Biestek*, 139 S. Ct. at 1154.

Here, the ALJ determined that Plaintiff retained the RFC to perform a reduced range of sedentary work with the "option to alternate/change positions as needed" and that, "[d]ue to her migraine headache disorder," could "understand, remember, and carryout simple tasks." (Tr. 28). In crafting the RFC, the ALJ examined the evidence of record, first noting that the record showed Plaintiff "continued to work without restriction" after her TBI and despite her gait problems in 2017. (Tr. 30); (Tr. 324, 325) (Dr. Christea's August 2017 treatment notes showing "tandem gait moderately abnormal" and Plaintiff "is working without restrictions as a correctional officer.");

11

(Tr. 445) (Plaintiff stating to consultative examiner that she worked "full-time" as a corrections officer for eight years, taking disability leave in November 2017). After Plaintiff stopped working, the ALJ noted the record showed some findings of limitation, like back tenderness, an antalgic gait, and a reduced range of spine motion, and ongoing reports of headache symptomology. (Tr. 30-31); (Tr. 773-74). The ALJ also pointed out that a notable examination in April 2019 showed Plaintiff appeared neurologically intact with full strength in her extremities and intact sensation despite her tenderness, reduced range of motion, and gait problems. (Tr. 30); (Tr. 773-74). The ALJ further noted that EMG testing (a nerve study) showed negative findings for radicular symptomology. (Tr. 30); (Tr. 360) (July 2018 EMG study showing "[e]xtensive EMG examination of both lower extremities is normal."). Further, the ALJ pointed out that Dr. Christea's April 2019 mental status examination "was normal" as well. (Tr. 30); (Tr. 773).

The ALJ also relied in part on the prior administrative findings of the State agency medical and psychological consultants, who found that Plaintiff's mental impairments were not severe and that she could perform a reduced range of light exertional work. (Tr. 27, 32, 80-84, 95-101). The ALJ agreed that Plaintiff's mental impairments were not severe, (Tr. 27), but explained that the record supported greater physical restrictions than the consultants found as they had not properly accounted for Plaintiff's subjective complaints. (Tr. 32); *Castile*, 617 F.3d at 929 (finding no error where "[i]t was because of and not in spite of [the claimant's] testimony that the ALJ limited her to a more restrictive residual functional capacity finding than any physician on the record."). As such, the ALJ went beyond the limitations outlined in the consultants' prior administrative findings, limiting Plaintiff to sedentary work and including mental restrictions as well. (Tr. 28, 32); *Dudley v. Berryhill*, 773 F. App'x 838, 842 (7th Cir. 2019) (finding no error where the ALJ's

12

RFC assessment was "more restrictive than the functional work-related limitations identified by the state-agency doctors.").

Furthermore, contrary to Plaintiff's argument, the ALJ clearly considered—and even partially credited—Plaintiff's migraine/TBI complaints by limiting Plaintiff to unskilled work, even though the State agency consultants' findings suggested they caused no functional limitation. (Tr. 28, 80, 95-96). While Plaintiff believes the evidence shows she has experienced significant cognitive decline, largely pointing to Dr. Harrington's June 2017 report, she fails to explain how this evidence supports greater RFC limitations than the ALJ found, which is her burden. *Mettler*, 2020 WL 634419, at *5. Nor does she demonstrate greater RFC limitations by pointing out that she continues to receive TBI/migraine treatment, as she seems to imply. *Simons v. Saul*, 817 F. App'x 227, 232 (7th Cir. 2020) ("Simons fails to explain how additional references to her mental health treatment would have affected a disability determination; neither the duration of her mental health treatment nor her depression medication establish an inability to work.").

Plaintiff also relies on some statements from her physicians saying she is "disabled," and an impairment rating prepared in the context of her workers' compensation claim. (Tr. 313-14, 459). But, again, Plaintiff fails to explain how these statements support greater or specific RFC restrictions, as is her burden. *Mettler*, 2020 WL 634419, at *5. In any event, these statements do not support additional RFC restrictions as statements of "disability" have no persuasive value under the regulations. 20 C.F.R. § 404.1520b(c), (c)(3)(i) ("Statements that you are or are not disabled," or statements about whether an individual can or cannot work, constitute evidence that is "is inherently neither valuable nor persuasive."). Similarly, this Court has explained that PPI ratings with no discrete functional limitations amount to little more than statements of "disability,"

13

which, as the regulations explain, are inherently without value. *Andersen v. Saul*, No. 2:19-CV-00378 (TLS/SLC), 2020 WL 8084176, at *7 (N.D. Ind. July 16, 2020), rep. & rec. adopted, 2021 WL 106265 (N.D. Ind. Jan. 12, 2021) (explaining that, while physician assigned a "PPI rating, he did not assign her any specific work-related limitations that the ALJ failed to consider. Ultimately, as the ALJ observed, the determination of disability is an issue reserved to the Commissioner.").

Finally, Plaintiff makes a cursory argument that she would be an unproductive worker, pointing out that, if she had additional limitations, she would not be able to work per the vocational expert's testimony. However, Plaintiff only offers a vague conclusion of inability to work and offers no specific point of error, making no argument that the ALJ failed to incorporate such limitations into the RFC. In any event, Plaintiff offers no evidence that she requires restrictions for off-task behavior, absences from work, or frequent breaks, thereby failing to carry her burden of showing the record supports such limitations. *Mettler*, 2020 WL 634419, at *5. While Plaintiff seems to imply that a single subjective statement from June 2019 supports her need to lay down during the workday due to headaches, she has not supported such subjective statements with other corroborating evidence. *Knox v. Astrue*, 327 F. App'x 652, 655 (7th Cir. 2009) ("There is no presumption of truthfulness for a claimant's subjective complaints; rather, an ALJ should rely on medical opinions based on objective observations and not solely on a claimant's subjective assertions."). Moreover, the ALJ already pointed out the record did not fully support Plaintiff's headache/TBI related complaints, like the one she alleges now, noting "there were no objective observations of headache symptomatology" and neurological findings were normal throughout the relevant period. (Tr. 30-31, 773-74).This Court declines Plaintiff's

14

invitation to reweigh the evidence and finds that the ALJ's decision is well supported by substantial evidence. Accordingly, the decision will be affirmed.

## Conclusion

On the basis of the foregoing, the decision of the Commissioner is hereby AFFIRMED.

Entered: November 1, 2021.

s/ William C. Lee  
William C. Lee, Judge  
United States District Court